477 So.2d 676 (1985)
Joseph FELIX III
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY and Dr. Florence Jones.
Nos. 85-CC-1261, 85-CC-1271.
Supreme Court of Louisiana.
October 21, 1985.
Rehearing Denied November 21, 1985.
*678 Joseph W. Thomas, Edwin E. Burks, New Orleans, for plaintiff-relator and plaintiff-respondent.
William R. Carruth, Jr., S. Alfred Adams, Baton Rouge, for defendants-respondents and defendants-relators.
MARCUS, Justice.
The issues presented in these applications arise pursuant to a judgment rendered in a medical malpractice suit.
Joseph Felix III (claimant) filed a medical malpractice suit in the Civil District Court for the Parish of Orleans for the wrongful death of his mother against Dr. Florence Jones and her insurer on May 11, 1984. Prior to filing suit, claimant requested review of his claim by a medical review panel pursuant to the provisions of the Medical Malpractice Act (act), La.R.S. 40:1299.41, et seq.[1] The panel issued an opinion stating that Dr. Jones failed to comply with the appropriate standard of care and that this conduct was a factor in the death of claimant's mother. After trial by jury, a special verdict was rendered finding Dr. Jones guilty of malpractice, no negligence on the part of claimant or his mother and fixing damages sustained by claimant at $300,000. The court rendered a judgment on April 18, 1985 in conformity with the verdict in favor of claimant and against Dr. Jones and her insurer in solido in the sum of $300,000 plus interest and costs, subject to their limit of liability of $100,000[2] and subject to credit for $1,750 paid by them to the medical review panel. The judgment also stated that "[t]he Commissioner of Insurance of the State of Louisiana, upon receipt of a certified copy of the Judgment, is ordered to comply with the provisions of R.S. 40:1299.44(B)."[3] Considering the judgment to be excessive, on May 16, 1985, Sherman A. Bernard, in his capacity as Commissioner of Insurance (commissioner) and the Patient's Compensation Fund (fund) filed a motion to intervene and a motion for a devolutive appeal from the judgment.[4] Claimant opposed the intervention and filed a petition for a writ of mandamus directing the commissioner to comply with the provisions of La.R.S. 40:1299.44(B). The commissioner answered opposing *679 the issuance of the mandamus on the ground that it was an improper means of directing him to comply with the provisions of La.R.S. 40:1299.44(B).
The trial judge allowed the commissioner and the fund to intervene and granted a devolutive appeal from the judgment. After a hearing, the trial judge further ordered the commissioner to comply with the judgment as well as the provisions of La. R.S. 40:1299.44(B) on or before June 30, 1985. The commissioner and the fund filed a motion for a suspensive and devolutive appeal from the judgment ordering the mandamus. The trial judge denied the suspensive appeal but granted a devolutive appeal. Aggrieved by the judgments of the trial judge ordering the issuance of mandamus and denying the suspensive appeal, the commissioner and the fund made two applications for certiorari to the court of appeal. The court of appeal granted one of the applications and ordered the trial judge to grant the commissioner and the fund a suspensive appeal from the judgment ordering the issuance of mandamus.[5] In view of that action, it considered the other application on the merits of the mandamus to be moot. On claimant's application, we granted certiorari to review the correctness of the judgment of the court of appeal ordering a suspensive appeal from the issuance of mandamus.[6] We also granted the application of the commissioner and the fund to review the correctness of the trial court's judgment ordering mandamus.[7]

PROCEDURE UNDER THE MEDICAL MALPRACTICE ACT
When a victim of alleged malpractice wishes to assert a malpractice claim against a health care provider who has qualified under the act, he must present his claim to a medical review panel and receive an opinion from the panel prior to filing a suit unless the parties have waived this requirement.[8] The panel procedure commences when the claim is filed with the commissioner.[9] When the panel procedure is completed, the panel chairman submits a copy of the panel's report to the commissioner and all parties and attorneys within five days.[10] The claimant may then proceed to take his claim to a court of law or settle with the health care provider as to liability, damages, or both.
The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in La.R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost; a qualified health care provider is not liable for an amount in excess of one hundred thousand dollars for all malpractice claims because of injuries to or death of any one patient.[11] When a claimant settles, arbitrates or obtains a final judgment in his favor against a health care provider in excess of one hundred thousand dollars, the balance of the claim is due from the Patient's Compensation Fund.[12] This fund is established and regulated as a special fund for the benefit of successful malpractice claimants. In order to provide monies for the fund, an annual surcharge set by the Louisiana Insurance Rating Commission is levied on all qualified health care providers.[13] These funds are paid into the state treasury and credited initially to the Bond Security and Redemption Fund. If the funds are not allocated to pay obligations secured by the full faith and credit of the state due and payable within any fiscal year, the treasurer transfers the total *680 amount of the surcharges to the fund.[14] This is a special fund in the state treasury, characterized by statute as a "budget unit of this state."[15] The duties of the commissioner are to collect the monies and administer the fund. After paying certain administrative expenses, the funds are used to discharge qualified claims on a semi-annual basis.[16] If the fund would be exhausted by payment in full of all claims allowed during an applicable semi-annual period, the amount paid to each claimant is prorated and any amount left unpaid is paid in the following semi-annual periods.[17]
There are five types of qualified claims against the fund including a final judgment in excess of one hundred thousand dollars against a health care provider.[18] Upon submission of a certified copy of the final judgment to the commissioner, he shall file a request with the state treasurer who issues a warrant against the fund in the amount of the claim.[19]

DO THE COMMISSIONER AND THE FUND HAVE A RIGHT TO INTERVENE AND APPEAL THE EXCESS JUDGMENT?
After final judgment, the commissioner and the fund were granted the right to intervene in the suit to appeal the excess judgment against the fund. The claimant argues that they had no right to intervene and appeal. We disagree.
La.Code Civ.P. art. 1091 provides:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant.
La.Code Civ.P. art. 2086 provides:
A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken.
In the instant suit, only the health care provider and her insured were made defendants. In Williams v. Kushner, 449 So.2d 455 (La.1984), we stated that the only party defendant contemplated by the act is the health care provider. In that case, we had to determine if in a medical malpractice action to obtain excess damages from the Patient's Compensation Fund, the right to a jury trial existed in view of certain statutes denying that right to state agencies.[20] Finding that the act does not specify the fund as a party defendant, we did not reach the issue of the exact status of the fund.[21] We noted that when the fund is defending an action by the claimant for excess damages after settlement with the health care provider, the fund is more in the nature of a statutory intervenor; it is a third person who has an interest in the proceedings between the claimant and the health care *681 provider because any damages in excess of one hundred thousand dollars are payable by the fund. Williams v. Kushner, supra, at 458, n. 16. Similarly, after a judgment is rendered in a suit between the claimant and the health care provider awarding damages against the health care provider in excess of one hundred thousand dollars, the commissioner and the fund have an interest in the action for the purpose of appealing the excess judgment against the fund. La.Code Civ.P. arts. 1091 and 2086. Accordingly, the trial judge was correct in granting the intervention of the commissioner and the fund for the purpose of appealing the excess judgment.

WAS THE JUDGMENT A FINAL JUDGMENT UNDER LA.R.S. 40:1299.44(B)?
La.R.S. 40:1299.44(B) requires the commissioner to submit a claim to the state treasurer after he receives a certified copy of a final judgment in excess of one hundred thousand dollars. The commissioner refused to do so for the reason that neither the final judgment of the trial court nor the mandate of La.R.S. 40:1299.44(B) required him to do so until after the appeal process was complete. In other words, the commissioner interprets "final judgment" in La. R.S. 40:1299.44(B)(2)(a) to mean a judgment after all avenues of appeal have been exhausted. Since the commissioner and the fund were granted a devolutive appeal from the trial court judgment, he argues that the judgment is not "final" for the purpose of initiating the payment of the claim against the fund. We disagree.
La.Code Civ.P. art. 1841 defines a final judgment as one that determines "the merits in whole or in part." Thus, a final judgment in La.R.S. 1299.44(B)(2)(a) is one that has determined the merits of the medical malpractice suit. La.Code Civ.P. art. 2082 states that an appeal is the exercise of a right of a party to have a judgment of a trial court revised, modified, set aside or reversed by an appellate court. A suspensive appeal suspends the effect or the execution of a final judgment but a devolutive appeal does not. La.Code Civ.P. arts. 2087, 2123, 2124.
After a final judgment was rendered between the claimant and the health care provider, the commissioner and the fund, considering the judgment excessive, intervened and appealed that issue. By appealing, the commissioner acknowledged his awareness that the judgment was final. Upon receipt of a final judgment, La.R.S. 40:1299.44(B)(2)(a) directs the commissioner to submit a voucher to the state treasurer who shall then issue a warrant in the amount of the claim against the fund. The commissioner could have suspended the performance of his duties by taking a suspensive appeal from the final judgment. Instead, he chose to appeal devolutively.[22] Under the circumstances, the claimant had the right to enforce the provisions of La. R.S. 40:1299.44(B)(2)(a).

WAS MANDAMUS A PROPER MEANS OF COMPELLING THE COMMISSIONER TO PERFORM HIS DUTIES UNDER LA.R.S. 40:1299.44(B)?
La.Code Civ.P. art. 3861 defines "mandamus" as a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in arts. 3863 and 3864. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. La.Code Civ.P. art. 3863. A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La.Code Civ.P. art. 3862.[23] *682 It is well settled that mandamus will lie to compel performance of prescribed duties that are purely ministerial and in which no element of discretion is left to the public officer. There must be a clear and specific legal duty which ought to and can be performed. State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665 (1950); Blanchard v. Brown, 388 So.2d 865 (La.App. 1st Cir.), writ denied, 386 So.2d 919 (La.1980).
We consider that La.R.S. 40:1299.44(B)(2)(a) imposes in clear and unequivocable terms purely ministerial duties upon the commissioner. When he refused to perform these duties and appealed devolutively, not suspensively, the claimant had no recourse but to request the issuance of a writ of mandamus, compelling the commissioner to perform the duties set forth in La.R.S. 40:1299.44(B)(2)(a).
The commissioner argues that mandamus is improper because it orders him to execute against state funds in violation of La. Const. art. XII, § 10(C), which states:

Procedure; Judgments. The legislature shall provide a procedure for suit against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
Even assuming that the fund is a state agency and that the monies appropriated for payment of medical malpractice claims are state funds, we do not consider that a writ of mandamus ordering the commissioner to expend the funds violates La. Const. art. XII, § 10(C). The state legislature has specifically authorized a procedure in La.R.S. 40:1299.44(B) to provide for the payment of a final judgment against the fund. Hence, the constitutional mandate would be satisfied if the fund were a state agency and/or if the monies were state funds. For the reasons stated above, we cannot say that the trial judge erred in granting the writ of mandamus.

SHOULD THE COMMISSIONER AND THE FUND BE ALLOWED TO SUSPENSIVELY APPEAL FROM THE MANDAMUS JUDGMENT?
Finally, we must decide if the court of appeal was correct in granting the commissioner and the fund a suspensive appeal from the mandamus judgment.
The articles of the Louisiana Code of Civil Procedure pertaining to mandamus do not regulate or otherwise limit the manner in which a mandamus judgment may be appealed. Hence, we must look to the articles on appeals for guidance. La.Code Civ.P. arts. 2082-2087, 2121-2124. In absence of authority to the contrary, a suspensive appeal from a mandamus judgment has been allowed by our courts. State ex rel. Resweber v. Durand, 112 La. 754, 36 So. 672 (1904); Rosteet v. City of Lake Charles, 215 So.2d 668 (La.App. 3d Cir.), writ denied, 253 La. 301, 217 So.2d 406 (1968).
The court of appeal, in allowing a suspensive appeal, reasoned that the commissioner and the fund were not parties to the medical malpractice action. Moreover, the judgment ordering the commissioner to comply with La.R.S. 40:1229.44(B) was no more than a gratuitous reference to the statute.
As we stated earlier, the only party defendant in a medical malpractice action is the health care provider. However, the commissioner and the fund may intervene for the purpose of appealing an excess judgment against the fund. The act requires only that when a final judgment over one hundred thousand dollars is rendered in a trial or an arbitration or a settlement, the commissioner shall issue a voucher or other appropriate request to the state treasurer who shall then issue a warrant in *683 the amount of the claim against the fund. Thus, we find that the commissioner was specifically ordered to perform his duties when he did not take a suspensive appeal from the final judgment rendered in the malpractice action. A suspensive appeal from the mandamus judgment would be tantamount to an untimely suspensive appeal from the trial court judgment. The commissioner should not be allowed a second chance to circumvent the performance of his duties under La.R.S. 40:1299.44(B). Accordingly, in the instant case, the court of appeal erred in allowing the commissioner and the fund to appeal suspensively from the mandamus judgment.

CONCLUSION
The commissioner and the fund had a right to intervene and appeal the excess judgment rendered in the medical malpractice suit between the claimant and the health care provider. When the commissioner did not take a suspensive appeal from the final judgment rendered in that suit, a mandamus action was a proper means of compelling the commissioner to perform his duties under La.R.S. 40:1299.44(B). While a suspensive appeal is generally allowed from a mandamus judgment, it was not proper in this case. Therefore, the trial judge was correct in ordering the issuance of mandamus. The court of appeal erred in ordering the trial judge to grant the commissioner and the fund a suspensive appeal from the judgment ordering the issuance of mandamus.

DECREE
For the reasons assigned, the judgment of the trial court ordering the issuance of a writ of mandamus is affirmed. The judgment of the court of appeal ordering the trial court to grant the commissioner and the fund a suspensive appeal from the judgment ordering the issuance of mandamus is vacated and set aside. The order of the trial court granting the commissioner and the fund a devolutive appeal is reinstated. The case is remanded to the court of appeal for further proceedings in accordance with law and the views expressed herein.
DENNIS, J., concurs.
NOTES
[1] The Medical Malpractice Act was amended by 1984 La. Acts, Nos. 41 and 435, effective June 5, 1984 and July 6, 1984, respectively. Although this claim was commenced prior to these dates, we will refer to the Medical Malpractice Act as amended because the amended portions do not affect the issues decided in this case.
[2] See La.R.S. 40:1299.42(B)(2).
[3] La.R.S. 40:1299.44(B) provides in pertinent part:

(1) The state treasurer shall issue a warrant in the amount of each claim submitted to him against the fund on June 30 and December 31 of each year except that payment for claims made pursuant to R.S. 40:1299.44(B)(4) or (B)(5), or both, shall be made upon receipt of such certified copy.
(2) The only claim against the fund shall be a voucher or other appropriate request by the Commissioner after he receives:
(a) A certified copy of a final judgment in excess of one hundred thousand dollars against a health care provider.
....
[4] The record reflects that Dr. Jones filed a motion for a devolutive appeal which was granted on June 12, 1985. However, claimant's brief to this court states that Dr. Jones decided not to appeal the judgment and paid the full amount of her liability.
[5] Felix v. St. Paul Fire and Marine Insurance Co., 471 So.2d 963 (La.App. 4th Cir.1985).
[6] 472 So.2d 907 (La.1985).
[7] 472 So.2d 908 (La.1985).
[8] La.R.S. 40.1299.47(B).
[9] Id., § 40:1299.47(A)(2)(b).
[10] Id., § 40:1299.47(J).
[11] La.R.S. 40:1299.42(B)(1) and (B)(2).
[12] Id., § 40.1299.44(B).
[13] Id., § 40:1299.44(A)(2).
[14] Id., § 40:1299.44(A)(1).
[15] Id., § 40.1299.44(A)(5)(g).
[16] Id., § 40:1299.44(A)(5) and (7).
[17] La.R.S. 40:1299.44(A)(7).
[18] Id., § 40:1299.44(B)(2)(a)-(e).
[19] Id., § 40:1299.44(B)(1) and (2).
[20] In Williams v. Kushner, 449 So.2d 455 (La. 1984), the claimant settled with the health care provider and his insured for $100,000 prior to trial with full reservation of rights to obtain excess damages from the Patient's Compensation Fund. When the health care provider agrees to settle its liability and the claimant is demanding an excess judgment from the fund, the act provides the procedure to be followed including the filing of a petition in the court in which the action is pending, service on the commissioner, and eventual settlement to be approved by the court or a court judgment fixing damages. La.R.S. 40:1299.44(C)(2)-(5). The act states that a judgment of the court fixing damages in a contested proceeding is appealable pursuant to the rules governing appeals in any other civil court case tried by the court. La.R.S. 40:1299.44(C)(6).
[21] We also did not reach the issue in Williams of whether or not the fund is a state agency.
[22] When the devolutive appeal was filed, the time for taking a suspensive appeal had not run. A suspensive appeal requires security of one and one-half times the judgment including interest, while no security is required for a devolutive appeal. La.Code Civ.P. art. 2124.
[23] The commissioner contends that mandamus is improper because there is relief by ordinary means. He argues that ordinary relief would mean delaying the execution of the judgment until the appeal process is completed. There is no merit to this contention since the commissioner did not take a suspensive appeal from the final judgment.