534 So.2d 1331 (1988)
Lynn Beaucoudray, wife of/and James Edward KELTY, Jr., individually and on Behalf of their minor child, Ann Mary Kelty
v.
Dr. Fred O. BRUMFIELD, M.D. and Southern Baptist Hospital, et al.
No. 88-CA-0592.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1988.
Writ Denied January 13, 1989.
*1332 Kenneth V. Ward, Jr., Metairie, for appellees.
William R. Carruth, Jr., Ambrose K. Ramsey, III, Carruth, Cooper and Adams, Baton Rouge, for appellants.
Before SCHOTT and LOBRANO, JJ., and HUFFT, J. Pro Tem.
LOBRANO, Judge.
This case of medical malpractice was first filed by James and Lynn Kelty, individually and on behalf of their minor child Ann Mary Kelty, by requesting the formation of a medical review panel on April 22, 1983. Plaintiffs alleged that the defendants, Fred O. Brumfield, M.D. and Southern Baptist Hospital were negligent in the delivery of Ann Mary Kelty which caused severe brain damage to the infant.
Before the review panel was convened, Dr. Brumfield filed an exception claiming that the Kelty's claim had prescribed. On February 13, 1985, the exception was overruled by the trial court. On June 25, 1985, the review panel rendered its decision.
On August 23, 1985, the Kelty's filed this petition in district court. During the course of this litigation the defendants reurged the exception of prescription. The trial court referred the exception to the merits of the case. This court denied defendants' writ application.
On April 29, 1987, the Kelty's settled their claim with Southern Baptist Hospital for $75,000.00. On November 2, 1987, the morning of the scheduled trial, the Kelty's *1333 reported that they had settled their claim on October 31, 1987 with Dr. Brumfield for $100,000.00, reserving their right to obtain excess damages from the Louisiana Patient's Compensation Fund (hereinafter the Fund). Both health care providers were dismissed from the suit. Nevertheless, on November 2, 3 and 6, 1987 the trial court heard the prescription exception previously filed by those health care providers, then urged by the Fund. The Fund did not actually file an exception until the hearing had commenced. During the course of the hearing the Fund also stipulated that damages would be in excess of $500,000.00.
On November 17, 1987 the trial court denied the exception on the basis that the Fund did not have standing to raise prescription once the health care provider admitted liability by settling for the maximum statutory limits. Although the court's reasons for judgment suggest that prescription had in fact run, the basis of the judgment is clearly the Fund's lack of standing to raise the issue.
A supplemental judgment was rendered on January 17, 1988 holding that plaintiff was not entitled to a trial on the issue of future medical expenses. That judgment was based on the fact that plaintiffs' claims were asserted prior to September 14, 1984, the effective date of Act 435 of 1984. The trial court awarded plaintiffs damages in the amount of $500,000.00, subject to a credit of $200,000.00.
The Fund appeals asserting that the trial court erred in holding that it does not have standing to raise prescription.
The plaintiffs answer the appeal arguing they are entitled to future medical benefits, as well as a trial on the issue of damages since they intend to contest the constitutionality of the $500,000.00 limitation.
Thus the issues for our determination are:
(1) Does the Fund have the right to urge the defense of prescription once the health care providers settled for their maximum liability?
(2) Are the plaintiffs entitled to future medical benefits?
(3) Are the plaintiffs entitled to a trial to determine the total amount of damages?
The Fund's Standing
The Fund bases its argument that it has the right to assert the defense of prescription on Civil Code Article 3453. That article provides:
"Creditors and other persons having an interest in the acquisition of a thing or in the extinction of a claim or a real right by prescription may plead prescription, even if the person in whose favor prescription has accrued renounces or fails to plead prescription."
For the following reasons we reject the Fund's argument and affirm the trial court.
La.R.S. 40:1299.44(C)(5) provides, in pertinent part:
"In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars." (emphasis added)
The Medical Malpractice Act does not contemplate the Fund as a party defendant. Williams v. Kushner, 449 So.2d 455 (La. 1984). The Fund is a "budget unit" of the State. La.R.S. 40:1299.44(A)(5)(g). The functions of administering the Fund are carried out by the commissioner of insurance. La.R.S. 40:1299.44(A)(5)(b). The act does not give the Fund status as a co-obligor or insurer of the health care provider. It is a creature of the legislature designed to satisfy settlements and/or judgments against health care providers in excess of $100,000.00. The Fund does not have to be made a party to the litigation, nor cast in judgment in order to disburse its funds. The only requirement is a final judgment or a court approved settlement, or a final *1334 arbitration award, against the health care provider in excess of one hundred thousand dollars. La.R.S. 40:1299.44(B)(2)(a-c). See also, Forstall v. Hotel Dieu Hospital, 429 So.2d 213 (La.App. 4th Cir.1983), writ denied 433 So.2d 1054.
In Felix v. St. Paul Fire and Marine Ins. Co., 477 So.2d 676 (La.1985), the Supreme Court defined the Fund as a statutory intervenor "who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of one hundred thousand dollars are payable by the Fund." Id. at 680, 681. Our interpretation of the Act makes it clear that the only issue confronting the fund once a maximum settlement has been reached with the health care provider is the amount of damages. La.R.S. 40:1299.44(C). If the settlement is less than the maximum one hundred thousand dollars, the plaintiff must still prove liability if he seeks damages in excess of the maximum. However, where the settlement is for the maximum amount, the statute is clear that liability is admitted.[1]
Thus the Fund is limited by the provisions of the Medical Malpractice Act, the act which created it. We are of the opinion that the legislature did not intend to give the Fund equal status as a party defendant once the health care provider settled for its maximum liability. In those instances, the legislature reserved to the Fund only the right to contest the amount of damages and nothing more. We therefore conclude, under the factual scenario of this case, that the Fund was not given the status of "creditor or other person" within the meaning of Civil Code Article 3453. It does not have the right to invoke the provisions of that article, nor does it have the right to question, for any other reason, the health provider's statutorily admitted liability.
Future Medical Benefits
Plaintiffs have answered this appeal asserting they are entitled to a trial on the issue of future medical benefits.
Act 435 of 1984 provided for the payment of future medical care and related benefits in excess of the statutory limitation of five hundred thousand dollars. La.R.S. 40:1299.43. However, subsection (A)(6) provided that the Act would be applicable to all claims filed on or after September 1, 1984. In the instant case, plaintiffs filed their claim seeking a medical review panel on April 22, 1983. However, suit was filed in Civil District Court on August 23, 1985.
Plaintiffs argue their "claim" was filed when suit was instituted, not when they requested the medical review panel. In support thereof, plaintiffs contend that since the panel cannot award damages, but only render an expert opinion, their claim was not filed within the meaning of the act. We disagree.
A prerequisite to the assertion of all malpractice claims against health care providers who are covered by the Medical Malpractice Act is review by a medical review panel. La.R.S. 40:1299.47(A)(1). The filing for a medical review panel suspends prescription. La.R.S. 40:1299.47(A)(2)(a). No action may be commenced in any court unless a claimant has presented his claim before a review panel. La.R.S. 40:1299.47(B)(1)(a)(i). And, legal interest on any judgment accrues from the date of filing for a review panel. La.R.S. 40:1299.47(M).
We are satisfied that a "claim is filed" when a plaintiff files a request for a medical review under the provision of La.R.S. 40:1299.47. In order to pursue his claim under the malpractice act, he must comply with those provisions. And when he does so it begins the procedural mechanism which ultimately will resolve the matter. It constitutes the "filing of his claim" within the meaning of La.R.S. 40:1299.43(A)(6). We therefore agree that plaintiff is not entitled to future medical expenses.
Alternatively, plaintiffs argue that the statute is remedial in nature and therefore should apply to all pending claims. In our *1335 opinion this statute is substantive in that it creates a right or obligation and therefore can have no retroactive application. However, even if it be considered procedural or remedial, the language of the act expresses a legislative intent for prospective application only. La.C.C. Art. 6; Graham v. Sequoya Corporation, 478 So.2d 1223 (La. 1985).
Constitutionality of the Medical Malpractice Act
Plaintiffs argue that they should be allowed to proceed with a trial on the damage issue because they intend to contest the constitutionality of the five hundred thousand dollar limitation. This Court, in Williams v. Kushner, 524 So.2d 191 (La. App. 4th Cir.1988), writs granted 526 So.2d 785, has upheld the constitutionality of the statutory limitation. The Supreme Court has granted writs to consider this issue, but as of the date of this opinion no judgment has been rendered. Therefore, at this time, plaintiffs have no right to proceed further. However, should the Williams case be reversed, we reserve to plaintiffs the right to proceed to trial on the issue of quantum.
AFFIRMED.
NOTES
[1] We deem it irrelevant that Southern Baptist settled for less than the maximum because liability for the injury and resulting damages was admitted by Dr. Brumfield when he settled for the statutory maximum.