KLEES, Judge.
This dispute concerns the amount of contributions owed by the city of New Orleans to its Firefighters Pension and Relief Fund [hereinafter referred to as “the Fund”]. On November 24, 1987, the Board of Trustees of the Fund, its secretary-treasurer, and the Fund itself [collectively referred to as “the Board”] filed a petition for a writ of mandamus against the city of New Orleans, the city council members, and various other city officials [collectively referred to as “the City”], demanding payment of allegedly delinquent contributions, as well as prompt payment of all future contributions owed to the Fund. On January 14, 1988, before the matter came up for hearing, the board and the City entered into an agreement resulting in the filing of a “Consent Order and Writ of Mandamus,” whereby the Board acknowledged payment of all amounts owed by the City through December 1987, and the court issued a peremptory writ of mandamus ordering the City to pay certain specified amounts on the first day of each month during the year 1988. This order to make continuing payments, however, was issued without prejudice to the City’s right to request dissolution of the order at any time on the grounds that said payments exceed the City’s legal obligation to the Fund under La.R.S. 33:2101 et seq., provided that these allegations were based at least in part upon an actuarial study commissioned by the City.
Subsequent to the entering of the consent order, the City did commission an actuarial study by Camus & Associates, which recommended that the Fund should be required to exhaust approximately 6.5 million dollars it held in assets before the City would be obligated to make any further contributions. Accordingly, the City did not submit the May, 1988 or June, 1988 payment. On June 13th, the City filed a motion to modify and/or partially dissolve the “Consent Order and Writ of Mandamus.” This motion was opposed by the Board, which also filed a rule to hold the City in contempt and to assess sanctions for its failure to make the May and June payments.
The motion and rule were heard together on June 29, 1988. Following the hearing, the trial judge issued an interim order finding that the City had willfully failed to comply with the consent order without first filing for modification, and ordering the City to pay immediately the full May payment and 13/30 of the June payment. The City paid these amounts, and the court took all other matters under advisement.
On July 14, 1988, the trial court issued judgment in favor of the Board, ordering the City to continue to make the scheduled payments to the Fund for the remaining *510 months of 1988. Additionally, the trial court decreed that the Fund would be permitted to maintain the sum of 5.8 million dollars as reserves for contingencies, and that the amount of the City’s contribution must be adjusted annually to effectuate this decree.
Both the Board and the City have appealed from this judgment. The Board contends that the trial court had no legal right to place a dollar limit on the amount of reserves that can be maintained by the Fund; that the court further erred by neglecting to issue a writ of mandamus to effectuate its judgment; and that the court also erred by failing to award interest, costs and expenses as sanctions for the City’s willful failure to pay. For its part, the City argues that the board is statutorily required to maintain in the Fund reserves of only $500,000, and that any amount of assets beyond this figure should be liquidated and used to pay current benefits, thus reducing the City’s required contribution.
The crux of this case is the interpretation of pertinent sections of R.S. 38:2101-2120, which governs the Fund. The Fund actually consists of two separate retirement plans: the “old system”, which covers firefighters who began their employment prior to January 1, 1968; and the “new system”, created in 1968 by R.S. 33:2101, which covers all firefighters employed after December 31, 1967 as well as those employed before 1968 who have elected to come under the new system. Both systems are funded by specified revenues from various state and local taxes, employee contributions, and employer (City) contributions. The funds of the two systems are completely segregated. This appeal relates only to the City’s obligation with regard to the old system, as that was the only dispute remaining between the parties at the time of trial. Thus, the issue on appeal is whether the trial court’s judgment violated the statutory scheme in relation to the old system.
The parties disagree as to whether certain sections of the statute apply to the old system only, the new system only, or both. Although the legislative intent is not entirely clear, we believe that all sections are applicable to both systems except those sections (such as 2117.3) that specifically refer either to firefighters employed after December 31, 1967 or to firefighters employed before January 1, 1968. Thus, section 2103, which provides that the Board shall employ an actuary who shall annually certify to the Board the amount of contributions required from the City and other sources “to maintain the system on an actuarial basis”, applies to the old system as well as to the new. With regard to the new system, the meaning of this provision is clarified by section 2117.3(3), which specifically states that the City must be assessed each year both a “normal contribution” and an “accrued liability contribution”, the rates of which shall be fixed “on the basis of the liabilities of the retirement system as shown by actuarial evaluation.” In the absence of a comparable provision relating to the old system, we interpret section 2103 as meaning that the method used to fund the old system should be sound from an actuarial standpoint, although not necessarily the advance funding which is mandated by section 2117.3 for the new system.
Section 2107, which we also find to be applicable to both systems, provides: “The sum of five hundred thousand dollars, when accumulated, shall be retained as a permanent fund, and thereafter the annual income only may be made available for the use and purposes of the pension and relief fund.” In our view, this sum is obviously intended to be a minimum amount; neither system is legally precluded from retaining more than $500,000 in assets.
Section 2112, which the City contends refers only to the old system and is authority for its position that the old system may not hold additional assets, reads as follows:
2112. Report to council; appropriation by council to make good deficit
The board shall make report to the council of the city of New Orleans showing the condition of the pension fund on the first day of January of each year. If at any time there is not sufficient money in the fund to pay each person entitled to *511 the benefits thereof the full amount, then the council of the city of New Orleans shall appropriate and pay into the fund an amount sufficient to make good the deficit, and the fund shall be thus replenished to warrant the payment in full of each beneficiary.
In our view, this provision is merely a precautionary statement applicable to both systems, which reaffirms that if, for any reason, the Fund is unable at any time to pay full benefits, it is the City’s responsibility to make up the deficit. Even though the new system is legally required to have advance funding, it could still experience a deficit if the City failed at any particular time to meet its obligations in that regard.
Since its creation, as mandated by section 2117.3, the new system has been funded in a way that the annual contributions made by the city are sufficient not only to pay anticipated benefits for that year, but also to build up the fund so that in a predetermined number of years, the Fund will be able to operate without any further employer contributions. Conversely, the old system has always been maintained on a “pay as you go” basis, which means that the size of the City’s annual contribution is determined solely by the amount necessary to pay anticipated benefits for that year. From an actuarial standpoint, therefore, the old system has an “unfunded liability”, and therefore, the City’s annual contribution will have to continually increase as more members become eligible to receive retirement benefits and fewer members are paying into the system.
According to the Board’s argument, the statutory scheme requires that both systems be actuarily funded. At trial, Bernard Nicolay, secretary-treasurer of the Board, testified that actuarial studies done in 1974, 1976 and 1980 each recommended that both systems be funded in advance so as to amortize the liability over twenty-five years. Beginning in 1975, the Board requested an additional 5 million dollars for the old system every year for this purpose, but the City as never complied with the request, sending only the amount designated as necessary to meet that year’s anticipated payouts.
Gary Curran, the Fund’s actuary who determines the amount of employer contributions needed each year, testified that the old system currently has an unfunded liability of $136,213,570. In his expert opinion, the “pay as you go” system is not actuarily sound because the rate of retirement, which can be predicted fairly accurately over a long term, cannot be accurately predicted for a short time span, such as one year. Therefore, fluctuations in the anticipated benefits owed will cause problems; that is, the City may have to come up with more money than has been budgeted for a particular year.
Mr. Curran also testified that the old system is not on a strict “pay as you go” basis because it has accumulated assets of approximately 6.4 million dollars. In a strict “pay as you go” system, there are no accumulated assets. Finally, Mr. Curran stated that some assets were necessary to cover the unpredictability of actual retirements, unanticipated layoffs and deaths, and unforeseen situations that raise benefits, such as the back pay awards recently given to firefighters as a result of litigation.
According to Mr. Nicolay, the Board had also drawn upon the assets to pay benefits wherever the City’s payments were not submitted or were submitted late. Jules Richard, the Fund’s auditor, also testified that some reserves were necessary for emergencies and unanticipated changes.
The primary witness on behalf of the city was Mr. Camus, also an actuary. Camus stated that the “pay as you go” method is an appropriate way of funding the old system, which is now closed (has no new members coming in). According to Camus, if the system were to be actuarily funded, it should have been done ten to twelve years ago when the recommendation was first made. Camus’ study also found that the assets accumulated by the old system were the result of over-contributions made by the City since 1975. Because the City had been assessed too much, Camus believes that the Fund should be required to deplete *512 these assets before requesting more money from the City.
Camus admitted, however, that in his expert opinion, some assets should be maintained to cover emergencies and unanticipated fluctuations in benefits. In the case of the old system, Camus believed that about 2 million dollars in assets would be sufficient.
The trial judge found that although the statutory scheme does not mandate that the old system be actuarily funded, the old system should be allowed to maintain some reserves, which he set at 5.8 million dollars, the amount on hand at the time of trial. We do not find this decision to be manifestly erroneous.
As we stated previously, although the statute indicates that the old system should be actuarily sound, it does not prescribe a specific method of advance funding, as it does in section 2117.3 for the new system. Moreover, the only guidance with regard to cash reserves is the minimum of $500,000 set by section 2107. Virtually every witness who testified at trial, including the Board’s actuary and the City’s actuary, believed that more than $500,000 in reserves should be kept for contingencies. The City’s expert stated that 2 million dollars would be sufficient; the Fund’s actuary believed that an unlimited amount of reserves should be accumulated, at least enough to erase the 136 million dollar unfunded liability. Therefore, in view of the testimony, allowing the Fund to maintain 5.8 million dollars in reserves, but no more, is reasonable, because it ensures that the Fund will have enough money to make its monthly disbursements despite unanticipated fluctuations in amounts. In our view, this ruling comports with the dictate of section 2103 that the Fund should be maintained on an actuarial basis. We therefore affirm the judgment in favor of the Board.
We also do not find the trial judge’s failure to award sanctions against the City to be an abuse of discretion. Although the City did not file its motion to dissolve the consent order until after it had missed two payments, it was aware that the Fund had more than sufficient assets to make those monthly payouts and in good faith believed, based on the Camus study, that the Fund should be required to use those assets. Moreover, the City made the payments promptly after the judge issued his interim order.
Finally, we do find the judgment to be in error in its failure to include a writ of mandamus directed at the City. This court has already determined that the proper procedure for enforcement of the obligations set forth in the pension statute is mandamus because payment by the City requires the City as a ministerial function to make an appropriation. Board of Trustees of Firemen’s Pension & Relief Fund v. City of New Orleans, 217 So.2d 766 (La.App. 4th Cir.1969). Mandamus lies to compel the performance of prescribed duties that are purely ministerial and in which no element of discretion is left to the public officers, but there must be a clear and specific legal duty which ought to and can be performed. Felix v. St. Paul Fire and Marine Ins. Co., 477 So.2d 676 (La.1985).
Because the trial court’s judgment requires the City to perform a purely ministerial function in making the payments to the Fund, it should have included a writ of mandamus. The writ of mandamus is also appropriate because the judgment super-cedes the consent order, which included a writ.
Accordingly, for the reasons stated, the judgment is modified to include a writ of mandamus ordering the defendants to comply with its terms in making the scheduled payments; in all other respects, the judgment is affirmed.
AFFIRMED.
WILLIAMS, J., dissents in part.