606 So.2d 940 (1992)
Hilton ROY, et al., Plaintiffs-Appellees,
v.
Dr. A. GUPTA, et al.,
The Louisiana Patient's Compensation Fund, Defendant-Appellant.
No. 91-246.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
Writ Denied December 11, 1992.
*941 John T. Bennett, Marksville, Edward A. Kaplan, Alexandria, for plaintiffs-appellees.
Provosty, Sadler & deLaunay, Frederick B. Alexius, David R. Sobel, Alexandria, for defendant-appellant.
Before DOMENGEAUX, C.J., and COREIL[*] and PATIN *, JJ. Pro Tem.
*942 JOHN A. PATIN, Judge Pro Tem.
Hilton M. Roy, Vickie Sue Roy Bonnette, Connie Roy, Brian Roy and Kim Roy Hayes, the husband and children of Barbara Roy, brought this suit for medical malpractice. The claim was initially against Dr. Akshey Gupta, Dr. Fernando G. Garcia and Humana Hospital. Court approved settlements were effected with the two doctors and the hospital with reservation of rights against the Louisiana Patients Compensation Fund. A trial was had against the Fund. After a bench trial judgment was rendered in favor of the plaintiffs for damages, costs and attorney fees. This appeal by the Fund followed.
On October 31, 1987, at approximately 6:00 a.m., Barbara Roy went to the emergency room of Humana Hospital-Marksville complaining of chest pains. At that time she was 42 years old. She had no prior history of heart disease but was taking medication for hypertension and was somewhat overweight. The attending physician was Dr. Akshey Gupta, a physician on independent contract who was moonlighting on weekends for the hospital. Upon examination Roy exhibited normal vital signs. She showed no obvious physical abnormalities.
Dr. Gupta performed an electrocardiogram, or EKG, which showed ischemic changes indicating a lack of oxygen to the heart tissue. Dr. Gupta applied a transderm nitroglycerin patch and gave her a prescription for nitroglycerin. After monitoring her progress he sent her home.
Several hours later she returned to the emergency room experiencing more chest pains. She was admitted to the hospital and it was determined that she was undergoing a heart attack. On November 3, 1987 she died of a massive myocardial infarction.
After the institution of a claim by petitioners a partial settlement was reached with Dr. Gupta, Dr. Fernando Garcia and his insurer, and Humana Hospital. Dr. Garcia was the cardiologist who attended Mrs. Roy before her death. The district court approved the following settlement:

Dr. Gupta...................$70,000.00
Dr. Garcia..................$ 4,000.00
Humana......................$ 5,000.00
 __________
Total.......................$79,000.00

The settlement provided that there was no admission of liability by any party. Plaintiffs reserved their right to proceed against the Fund for the excess. Judgment approving the settlement was signed on December 8, 1989.
On March 5, 1990 a first amended petition was filed, releasing Dr. Garcia and Humana from any and all claims of negligence or malpractice and reaffirming the claim against Dr. Gupta and against the Fund, for excess damages.
A bench trial was held on October 29, 1990. The trial court found Dr. Gupta negligent in failing to hospitalize Mrs. Roy or failing to inform her of the serious nature of her situation so that she would agree to hospitalization. The trial court also found that had Mrs. Roy been hospitalized on her first visit her chances of survival would have been greatly increased. He found no negligence on the part of any other health care provider.
The following award for damages was made:

HILTON ROY (husband):
general damages..............$225,000.00
economic loss................$220,480.48
VICKIE ROY BONNETTE:.........$ 75,000.00
CONNIE ROY:..................$ 75,000.00
BRIAN ROY:...................$ 75,000.00
COSTS:
(deposition and witness fees)$ 12,741.38

The trial court held the Fund liable for a $500,000.00 limit, subject to a $100,000.00 credit for the settlement.
Appellant asserts the trial court erred in finding that Dr. Gupta failed to advise Mrs. Roy she should be hospitalized *943 or point out the potential dangers of not being hospitalized. Also it was error for the trial court to find that Mrs. Roy should have been hospitalized. Lastly, appellant asserts error in the trial court's finding that Mrs. Roy's chances for survival would have been increased had she been admitted during her first visit.
Under La.R.S. 9:2794 a plaintiff's burden of proof for malpractice in an area of medical specialty requires a showing of: 1) the degree of skill and care ordinarily practiced by physicians in that same special field; and 2) either the defendant's lack of knowledge in that field or a failure to exercise the requisite care and diligence in utilizing the special skill.
As this case was heard by the bench, determinations of possible breaches of the appropriate standard of care were left to the trial judge. He sat as the trier of fact and made his findings related to negligence based on the evidence and inferences therefrom. In order for this court to upset the factual findings of the trial court there must exist manifest error. Thus, after a careful review of all the facts, if the trial court's findings of fact are not clearly wrong, we must allow them to stand even if the facts are open to more than one interpretation. Rosell v. Esco, 549 So.2d 840 (La.1989).
The trial court found Dr. Gupta either failed to recommend hospitalization to Mrs. Roy, or failed to convey to her the gravity of the situation so as to convince her to be hospitalized. It further ruled that she should have been admitted and failure to do so violated the applicable standard of care.
Appellant asserts Dr. Gupta acted in a fashion not violative of the proper procedure. It contends that while his actions may not have been the best possible route, it was nevertheless not so uncommon as to be considered negligent.
Dr. Gupta testified that Mrs. Roy was not in any severe distress when he attended her. He stated that her complaints of chest pains were compatible with her having done some sweeping the day before. He stated that the ischemic changes evident in her EKG were compatible with results sometimes seen in patients who take the hypertension medicine that Mrs. Roy was on. He also testified that he tried to convince Mr. and Mrs. Roy that they should stay for further testing or visit the local charity hospital if they could not afford to stay at Humana. He further testified that the Roys related they could not afford Humana and wished not to go to the local charity hospital.
In finding that Dr. Gupta was negligent in not having Mrs. Roy hospitalized, the trial court chose to believe Mr. Roy's testimony that he was able to afford hospitalization at Humana and would have had his wife admitted had he been advised to do so or been made aware of the severity of the situation. Also, two of the medical expert witnesses, Drs. Caskey and d'Autremont, testified that it is common practice to enter in a patient's record whether or not a recommendation of hospitalization was made. No such notation was made by Dr. Gupta in Mrs. Roy's chart.
The trial court also relied on the expert witnesses in finding that Mrs. Roy should have been admitted. All of the medical expert witnesses except one testified that Mrs. Roy should have been hospitalized. Dr. d'Autremont, a witness for the defense, stated she felt the failure of Dr. Gupta to admit Mrs. Roy fell below the accepted standard of care. The only doctor to disagree was Dr. Kilpatrick, another defense witness. He testified that such a decision varied greatly with each person. In any event the trial court disregarded his testimony because he was too hostile in his responses to be of any assistance.
In his reasons for judgment, it was evident the trial judge was not convinced by Dr. Gupta's explanation of why Mrs. Roy was not hospitalized. He focused on Dr. Gupta's failure to have x-rays taken during the first visit which might have allowed him to determine whether the ischemic changes were due to her hypertension medication or indicated the beginnings of a heart attack. The relative simplicity of the technique and its obvious availability lent credence to the trial judge's belief that the *944 requisite attention was not paid to Mrs. Roy's complaints.
The last factual based error asserted concerns whether or not Mrs. Roy would have died had she been properly treated upon her first visit.
The establishment of a breach of duty constituting malpractice raises the question of whether the malpractice contributed to the death, or lessened the decedent's chance for survival. This is a question of fact. Smith v. State Through Dept. of HHR, 517 So.2d 1072 (La.App. 3rd Cir.1987); Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986). It is not necessary that the doctor's negligence be the sole causative factor, only that it increases the risk of harm Smith, Hastings, supra.
As stated earlier, this is a question of fact and as such, much deference must be given the trial court's determination. The trial court found that Mrs. Roy's chances of survival would have been greatly increased with admission and proper treatment. The law does not require proof that proper treatment would have been the difference between Mrs. Roy dying or living. It only requires proof that proper treatment would have increased her chances of survival. Even though the testimony of Dr. d'Autremont was guarded in this area, the inference can be drawn from her testimony that while nothing could insure Mrs. Roy's survival, admittance on the first visit would have at least increased her chances.
We cannot say that the findings of fact of the trial court are clearly wrong. This is a difficult area in which to make factual determinations, and the degree of specialization requires the trier of fact to rely heavily on the testimony of the experts. The trial judge was present and able to determine the credibility and sincerity of all who testified. Our review of the record reveals the trial court's findings to be sound and thus no manifest error was committed. We find no error in the first three assignments.
The next assignment of error is whether or not the trial court erred in issuing a single $100,000.00 credit to the fund where plaintiffs settled with three health care providers.
Appellant argues La.R.S. 40:1299.42(D)(5) mandates a $100,000.00 credit be given for each of the health care providers involved in the settlement. As three were involved in the settlement in the present case, appellant asserts it is entitled to a total credit of $300,000.00.
La.R.S. 40:1299.42(D)(5) states:
(5) In the event that a partial settlement is executed between the defendant and or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2). (emphasis added, footnote deleted).

La.R.S. 40:1299.42(B)(2) states in pertinent part that, "[a] health care provider qualified under this part is not liable for an amount in excess of one hundred thousand dollars ... for all malpractice claims because of injury to or death of any one patient."
Appellant states that the statute is clear in its meaning that for each settlement entered into with a health care provider it is entitled to a credit against the judgment for the full limit of that health care provider's malpractice insurance. It cites Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988), for its contention that even if the health care provider settles for an amount below the full limit of the insurance, the fund still receives credit for the full amount.
Plaintiffs argue that the fund is entitled to only one credit based on the finding of negligence on the part of only one health care provider. Subsequent to the settlement approval, but prior to the trial, plaintiffs amended their petition to remove the other health care providers and only assert *945 the negligence of Dr. Gupta. Essentially they argue that the judgment was against Dr. Gupta only, and thus only one credit of $100,000.00 was necessary. For this contention they cite Stuka v. Fleming, 561 So.2d 1371 (La.1990), certiorari denied,___ U.S.___, 111 S.Ct. 513, 112 L.Ed.2d 525.
The cases of Kelty and Stuka do not directly address the issue of credits. Kelty involved a suit against two health care providers, a doctor who settled for the limits of his liability, and the hospital which settled for $75,000.00. The district court granted judgment in favor of plaintiff in the amount of $500,000.00 subject to a $100,000.00 credit for each health care provider. The amount of credit was not an issue raised on appeal, and it was not addressed by the appellate court.
Stuka involved a suit against three doctors for malpractice. A settlement was reached between plaintiffs and the doctors' insurer. The petition was amended requesting judicial approval of the settlement and adding the corporation which employed the doctors and the patient compensation fund. The terms of the settlement according to the amended petition had the insurer paying $100,000.00 on behalf of one of the doctors and the corporation in return for the release of all of the health care providers. The plaintiff reserved rights against the doctor in whose name the settlement was reached and the Fund, to the extent necessary to insure recovery of the excess. The Fund was then credited for the $100,000.00 settlement for one health care provider because that one admitted liability.
Plaintiffs assert that Stuka and the present case are similar. They contend that the court found Dr. Gupta to be the only liable health care provider and, as in Stuka, only one credit should be given.
The trial court judge's reasons echo this contention. He views the finding of liability as the determining factor in assessing credits. In any event, the trial court stated in his reasons, "the fact that two other initial defendants paid a minimal amount of money to be released, does not warrant the Louisiana Patient's Compensation Fund to receive $100,000.00 per health care provider."
The question becomes whether or not credit is given for all of the health care providers who are potentially liable and who participate in a settlement, or for only those involved in the settlement whose liability is proven by either an admission of liability by settling for the limits of liability or by obtaining a judgment of negligence and malpractice against them. There are good arguments for both sides. To allow a plaintiff to name several health care providers and settle with all for under the limit, and then amend the petition to allege the negligence of only one, gives the plaintiff a chance to recover from many and still expose the fund to a potential liability of $400,000.00. On the other hand, nothing prevents the fund from asserting as a defense the negligence of those parties not named at trial and having liability reduced by the amount in settlement.
It is well entrenched in the jurisprudence that where there is a settlement for the limits of liability by the health care provider, the only remaining issue is quantum. The fund is not a party defendant, rather it is a statutory intervenor. See, Williams v. Kushner, 449 So.2d 455 (La.1984); Felix v. St. Paul Fire and Marine Ins. Co., 477 So.2d 676 (La.1985).
In this instance, however, liability is an issue. Furthermore, the only liability at issue was Dr. Gupta's. The amended petition alleged only his negligence. The judgment was rendered finding only him at fault. The other two health care providers were not named and not a party to the trial.
The statute mandates credit against the judgment for the amount of malpractice insurance in force for the liable health care provider. In the present case there is only one liable health care provider. The other two were relieved of liability. Therefore, we approve the trial court's reduction of the judgment against the fund by $100,000.00, the amount of malpractice insurance held by the one liable health care provider.
*946 Appellant next contends the trial court erred in his award of expert witness fees.
La.R.S. 13:3666 authorizes the trial court to determine the amount of fees to be paid an expert witness either
(1) from the testimony adduced upon the trial of a cause, the court shall determine the amount thereof and include same or,
(2) by rule to show cause ...
Further authority appears in La.R.S. 9:2794 B, which provides that "the fee of the physician ... called for deposition and/or testimony under this section will be set by the court." Here the trial court fixed the fees at "the actual amount charged by ... the various doctors for their testimony to include Dr. Buccie's fee for attending trial and Dr. Cornwell's fee." Although the court is not bound by the fee arrangement between a litigant and his expert witnesses, it may award the full amount charged if the amount is reasonable in light of the many factors the court considers in fixing expert witness fees. McGee v. Miears, 516 So.2d 1241 (La.App. 2nd Cir.1988) No contradictory rule is required where the court is satisfied from the testimony adduced at the trial.
The trial court has much discretion in fixing expert witness fees and where there is no showing of a clear abuse of that discretion, his findings will not be disturbed.
The next assignment of error is that the trial court erred in awarding the costs of playing the video deposition tapes during the trial.
La.Code Civ.P. art. 1920 states in pertinent part, "[e]xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
La.R.S. 13:4533 states, "[t]he costs of the clerk, sheriff, witness fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs." (emphasis added).
Under La.C.C.P. art. 1920 the court may award any costs not prohibited by law that it deems equitable. La.R.S. 13:4533 does not contain a prohibition against the taxing of replay costs. On the contrary, it states that "all other costs allowed by the court shall be taxed." Reading the two statutes together, we can not escape the conclusion that the trial court properly exercised its discretion. This assignment is without merit.
We have noted Goodwin v. Hartford, 530 So.2d 1218 (La.App. 2nd Cir.1988) which holds to the contrary and which is cited by appellant. We do not agree with its holding that "La.R.S. 13:4533 allows only expenses for taking a deposition ..."
Appellant also asserts error in the trial court's awarding special damages where they were not alleged by plaintiffs in the pleadings.
La.C.C.P. art. 861 states "[w]here items of special damages are claimed, they shall be specifically alleged."
La.C.C.P. art. 1154 provides an exception to the rule of Article 861. Likewise, there is much jurisprudence which recognizes the exception; that is, evidence of claims not originally pled, which would normally be excluded, may be introduced where there is no objection and the pleadings are considered expanded to include the new claims. See, State Farm Fire & Cas. v. Valley Elec., 558 So.2d 731 (La.App. 3rd Cir.1990); Land and Offshore Co. v. Martin, 469 So.2d 1177 (La.App. 3rd Cir.1985).
In the present case the economist's report, the funeral bill, Dr. Garcia's bill, Humana Hospital's bill, a letter from Fr. Messina detailing the deceased's employment and copies of various tax returns were all introduced into evidence by plaintiffs' counsel. At the time of their introduction the trial court asked counsel for the fund if he had objections to the introduction of any of the evidence, to which he replied he had none.
Appellant contends that it timely objected to the introduction of evidence related to special damages in their pre-trial memorandum. A review of that document shows that an objection was made to an award of special damages on the basis of no liability, and not because it was not properly pled.
*947 In any event, counsel was afforded a chance to object during trial and did not. The pleadings were expanded accordingly, and the trial court properly exercised its discretion in making such an award. This assignment is without merit.
Appellant next asserts that the general damage award was excessive.
Appellant asserts that the general damage award was too great in relation to the injury suffered and in comparison to similar cases. The primary focus of its argument is the trial court's award for economic loss.
Professor Donald Cromwell, an economist, testified for plaintiffs as to the economic loss suffered by Mr. Roy from the loss of his wife. He testified that Mrs. Roy was employed part-time as a house keeper for Fr. Messina. He stated that the amount she made was offset by her general consumption of food and goods. He further related that Mrs. Roy worked an estimated fifty hours a week in her own home. Based on this figure, he set out the amount of hours she worked per week at minimum wage rate for the remainder of her husband's natural life expectancy, applied a discount rate and came out with the amount Mr. Roy would have to pay someone else to perform those services for the next thirty years. His conclusion was Mr. Roy suffered an economic loss of $220,480.48.
Economic loss is simply one of the considerations which are a part of the general damages award. In determining whether a general damage award is too high, economic loss must be combined with the general damage award and the total must be reviewed to see if it shocks the court's conscious. Brooks v. City of Baton Rouge, 558 So.2d 1177 (La.App. 1 Cir. 1990).
After combining the two awards, the conscious of this court is not shocked. Mrs. Roy was a relatively young woman at the time of her death. The testimony supports the trial court's findings that she was a hard worker and a caring wife. The economists' testimony was concise and clear, and also uncontradicted.
Appellant's argument that the loss is speculative is without merit. The assessment of economic loss is not an exact science. There was no doubt in the trial court's mind that Mr. Roy would have to spend money to have someone perform the duties that were once done by his wife. We cannot say that the trial court abused its discretion in reaching this decision.
As to the general damage award as a whole, again, we cannot say there was an abuse of discretion. Mrs. Roy was a loving wife and mother. A review of the testimony permits no other conclusion. She was denied life at a young age by an act of negligence. It is well settled jurisprudence that the trial court is afforded great discretion in awarding general damages. Reck v. Stevens, 373 So.2d 498 (La. 1979). This portion of the judgment is not erroneous.
Additionally, the plaintiffs have answered the appeal and request this court to amend the lower court's judgment to assess costs of funeral expenses, Dr. Garcia's bill and Humana's bill, in addition to the $400,000.00 for which the fund is cast in judgment. Plaintiffs' position is that the aforementioned damages are actually "future medical care and benefits" as contemplated by La.R.S. 40:1299.43.
La.R.S. 40:1299.43(B)(1) defines future medical care and related benefits as "all reasonable medical, surgical, hospitalization, physical rehabilitation, and other custodial services." Only future medical care and the related benefits are paid in addition to the $500,000.00 limit of the Fund.
The language contemplates the costs of maintaining medical attention for an injured but living victim. We find the bills claimed do not fall into the category contemplated by the statute. We find no error in the judgment as to this issue.
The judgment will be affirmed at the cost of appellant.
AFFIRMED.
NOTES
[*] Judges Joseph E. Coreil and John A. Patin, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.