VICTORY, Judge.
In this medical malpractice case, the Louisiana Patient’s Compensation Fund (Fund), appeals as excessive a $412,500 general damage award, and further claims that the Fund is entitled to an additional $100,000 credit for plaintiff’s pretrial settlement with the doctor and his insurer. We affirm the amount of the award, but amend to give the Fund an additional $100,000 credit.

FACTS

Dr. Robert Holladay performed back surgery on plaintiff, Alfred Thomas, a 39-year-old male, at Schumpert Medical Center on March 19, 1985. Several hours following surgery, Thomas complained of lack of feeling in his lower extremities. After some delay, Dr. Holladay was notified and thereafter performed a CAT scan which revealed a hematoma in the spinal canal. After further delay, surgery was performed to remove the hematoma.
As a result of these events, Thomas experienced neurological damage resulting in the permanent loss of normal function of his bowel and bladder, as well as some sexual dysfunction. Thomas timely filed a complaint of medical malpractice against Dr. Holladay and Schumpert. The medical review panel issued an opinion finding both defendants’ treatment of plaintiff fell below the appropriate standard of care. On July 26, 1988 Thomas filed suit against Schumpert, Dr. Holladay, Dr. Holladay’s malpractice insurer, and the Fund seeking compensation for his injuries. He subsequently dropped the Fund as a named defendant.
On August 10, 1989, Thomas settled his claim against Schumpert for $100,000, reserving his rights against the remaining defendants. Thomas then amended his petition to once again include the Fund as a defendant. On April 24, 1991, Thomas settled his claim against Dr. Holladay and his insurer for $40,000, reserving his rights against the Fund.
On April 6, 1992, a jury awarded Thomas $412,500 in general damages and $10,-610.20 for past medical expenses, in addition to an award for any related future medical expenses. Thereafter, the Fund was credited $100,000 by the trial court for Thomas’ settlement with Schumpert, but denied any credit for the $40,000 settlement plaintiff made with Dr. Holladay and his insurer. The Fund filed motions for a new trial, JNOV and remittitur, which were all denied. This appeal followed.

CREDIT

In addition to the $100,000 credit it received against the jury’s award for Thomas’ settlement with Schumpert, the Fund argues that it should have also received a second $100,000 credit for Thomas’ settlement with Dr. Holladay and his insurer. The Fund contends that even though Thomas settled with Dr. Holladay for only $40,-000, LSA-R.S. 40:1299.42(D)(5) authorizes a $100,000 credit for each settlement with a health care provider. We agree.
The Medical Malpractice Act, enacted by La.Acts 1975, No. 817, provides a scheme for compensation of medical malpractice victims who have been injured by qualified health care providers. LSA-R.S. 40:1299.41 et seq. Under the Act, the total amount recoverable by a victim for claims against all health care providers, exclusive of future medical care and related benefits, is $500,000. LSA-R.S. 40:1299.42(B)(1); Stuka v. Fleming, 561 So.2d 1371 (La.1990); LaMark v. NME Hospitals, Inc., 542 So.2d 753 (La.App. 4th Cir.1989). The Fund is responsible for payment of damages in excess of the total liability of all concerned health care providers up to $500,000. LSA-R.S. 40:1299.42(B)(3).
The law is settled that once there has been a $100,000 settlement payment by any health care provider or his insurer, the issue of liability can no longer be litigated by the Fund on the part of any other named or unnamed health care provider. See Kolowski v. Sanchez, 576 So.2d 470 (La.1991); Stuka v. Fleming, supra; Roy v. Gupta, 606 So.2d 940 (La.App. 3d Cir.1992), writ denied 609 So.2d 232 (La.1992); *69 Mumphrey v. Gessner, 581 So.2d 357 (La.App. 4th Cir.1991). Therefore, since Schumpert had paid $100,000 in settlement, the trial court correctly refused to allow the Fund, the only remaining defendant at trial, to litigate liability.
However, the issue of whether multiple credits are due the Fund for multiple settlements with health care providers is not predicated upon a determination of the liability of the health care providers. LSA-R.S. 40:1299.42(D)(5), the portion of the Medical Malpractice Act which allows credits, states:
In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient’s compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in LSA-R.S. 1299.42(B)(2).
The wording of credit statute does not specifically address the number of credits that can be applied. The Fund claims the statute allows a credit for the amount of liability insurance in force for each settlement between the plaintiff and a defendant health care provider and/or insurer. Plaintiff/appellee contends only one such credit is allowed.
The only case we have been cited that has discussed and ruled on multiple credits is Roy v. Gupta, supra.[1] The plaintiffs (surviving spouse and children) sued Dr. Gupta, Dr. Garcia, and the hospital, claiming malpractice by each contributed to the death of Barbara Roy. After suit was filed, a settlement was made in which Dr. Gupta paid $70,000, Dr. Garcia $4,000, and the hospital $5,000. All rights against the Fund for excess damages were reserved in the settlement. Following a bench trial, the trial judge held that only Dr. Gupta had committed malpractice, and set damages in excess of $500,000. He thereafter held the Fund liable for the statutory maximum of $500,000, subject to a $100,000 credit for the settlement. The Fund appealed, claiming three $100,000 credits, one for each settling health care provider. The Third Circuit, readily acknowledging that Kelty v. Brumfield and Stuka v. Fleming did not directly address the issue of multiple credits, nevertheless affirmed, holding that only one $100,000 credit was due the Fund.
Roy v. Gupta is easily distinguished on its facts. No settling defendant or insurer, or even all of them combined, paid $100,-000, so the rule of Stuka did not apply and the liability of all health care providers was an issue at trial. Further, we cannot agree with the opinion where it states “The statute mandates credit against the judgment for the amount of malpractice insurance in force for the liable health care provider.” 606 So.2d 940, 945. We see no language in § 1299.42(D)(5) that says or implies a credit is due the Fund only for a settlement by a liable health care provider. The credit statute simply says a credit is due the Fund when the provider and/or his insurer pays $100,000 or less in settlement. Moreover, we see nothing in the statute that suggests that multiple credits are not due the Fund when multiple settlements with health care providers and/or their insurers are made. Of course, once any health care provider and/or his insurer pays $100,000, as in the instant case, the Fund, as the sole remaining defendant, is prohibited from litigating the liability of any health care provider, named or unnamed. Stuka v. Fleming, supra.
Further, to allow the Fund only one credit against a judgment, when the plaintiff has settled with more than one health care provider would thwart the Act’s intent that the total amount recoverable by the plaintiff from all health care providers and/or their insurers, and the Fund, cannot exceed $500,000. See LSA-R.S. 40:1299.42(B)(1); LaMark v. NME Hospitals, Inc., supra. *70 For example, in the instant ease if the jury had returned a $500,000 general damage verdict, the plaintiff would receive $100,000 from Sehumpert, $40,000 from Dr. Holla-day’s and/or his insurer, and $400,000 ($500,000 less $100,000) from the Fund, for a total of $540,000, in excess of the amount provided by the Act.
If only one credit was allowed, after the first settlement of $100,000, the plaintiff and any remaining health care provider/insurers would have great incentive to settle, since no additional credit for such settlement could be applied against the judgment. By settling for under $100,000 each, the remaining health care providers and/or their insurers could avoid a possible judgment up to the statutory maximum of $100,000 each, all to the detriment of the Fund, unable to contest the liability of any health care provider and responsible for all damages over $100,000 up to $500,000.
Consequently, we find that the trial court erred in failing to reduce the jury’s award by a second $100,000 credit for Thomas’ settlement with Dr. Holladay’s insurer. Even though the settlement was for only $40,000, LSA-R.S. 40:1299.42(D)(5) clearly provides that a credit of $100,000 (the amount of insurance in force) is allowed when there has been a settlement for $100,-000 or less with a health care provider and/or his insurer.

DAMAGES

The Fund also seeks a reduction in the jury’s award of $412,500 in general damages. In seeking this reduction, the Fund argues that Thomas’ injuries were not severe enough to warrant such a high award, that the jury was swayed by sympathy for Thomas, and overreacted to the sensitive and embarrassing nature of his injuries.[2]
The assessment of monetary damages is discretionary with the jury and cannot be disturbed by a reviewing court absent a clear showing of abuse of discretion. The determination of whether a jury abused its discretion in assessing damages must be based upon the peculiar facts of each case and with due regard for the fact that the jury is in the best position to evaluate the credibility of witnesses, including their testimony about the nature and extent of the injuries involved. Marshall v. A & P Food Co. of Tallulah, 587 So.2d 103 (La.App. 2d Cir.1991); Lloyd v. T.G. & Y. Stores Co., 556 So.2d 629 (La.App. 2d Cir.1990).
The question for the appellate court is not whether a different award may have been more appropriate, but rather whether the jury’s award can reasonably be supported by the record. The appellate court must first reach a determination that the trier of fact abused its discretion before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award. Reck v. Stephens, 373 So.2d 498 (La.1979); Lloyd v. T.G. & Y. Stores Co., supra.
Thomas was confined to a wheelchair for the first three months following surgery. He could perform no bowel and bladder functions without the help and assistance of his family. He has since learned to perform these functions for himself, however the procedures are tedious and inconvenient. Although not excessively painful, to urinate Thomas must catheterize himself at least six times a day for the rest of his life. He has no control over his bowels and wears a diaper when he is away from his home for any length of time. He is unable to have a natural erection and must use a penile injection if he wishes to have intercourse. Although he can experience an orgasm, he is limited to one injection per week. On at least two occasions, his erection would not subside without medical intervention causing extreme pain. There is medical testimony in the record indicating that he is now sterile. Most significantly, these conditions occurred when Thomas was only 39 years old and are permanent.
*71 As might be expected, Thomas has experienced severe mental and emotional problems because of his physical injuries. Two of Thomas’ children testified that their relationship with their father deteriorated after he realized that his conditions would be permanent. Additional testimony suggests that Thomas has become an angry and bitter person. These very personal and sensitive problems have obviously stripped him of some dignity and feeling of self-worth and caused substantial embarrassment and depression.
Although Thomas appears to have adjusted to his bladder and bowel incontinence and sexual dysfunction with remarkable success, his injuries are severe and permanent. Considering our constraints in the review of damage awards and the particular facts and circumstances in this case, we cannot say that the jury abused its discretion in awarding $412,500 in general damages to Thomas, although we may not have awarded such an amount had we been sitting as the factfinder. Since we find no abuse of the jury’s discretion in awarding damages, there is no necessity to resort to prior awards. Reck v. Stephens, supra.

DECREE

For the reasons given, the judgment of the trial court is amended to give the Patient’s Compensation Fund an additional $100,000 credit for Thomas’ settlement with Dr. Holladay and his insurer. In all other respects the judgment is affirmed.[3]
AMENDED, AND AS AMENDED, AFFIRMED.

. In Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988), two $100,000 credits were allowed at the trial level, but the appropriateness of the credits was not at issue on appeal and not addressed by the appellate court.

. The fund also argues that we should find error on the part of the trial court in denying the motion for JNOV, and make an independent assessment of damages on appeal because of this finding relying on Higley v. Kramer, 581 So.2d 273 (La.App. 1st Cir.1991). Our finding that the damages are not excessive pretermits the need to address this issue.

. In his response brief to the Fund’s appeal, Thomas asks this court to reconsider whether the suspensive appeal bond filed by defendant was timely. However, appellant has not filed an answer to this appeal or otherwise properly brought the issue before this court.