847 So.2d 236 (2003)
Susan ARRINGTON, et al.
v.
E.R. PHYSICIANS GROUP A P M C.
No. 03-02.
Court of Appeal of Louisiana, Third Circuit.
May 21, 2003.
*237 Oliver "Jackson" Schrumpf, Sulphur, LA, for Plaintiff/Appellant: Susan Arrington, et al.
Benjamin W. Mount, Bergstedt and Mount, Lake Charles, LA, for Defendant/Appellee: Galen-Med, Inc. formerly d/b/a Lake Area Medical Center.
James Shelton, Durio, McGoffin and Stagg, Lafayette, LA, for Defendant/Appellee: E.R. Physicians Group, Inc.
Court composed of SYLVIA R. COOKS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
COOKS, Judge.

STATEMENT OF THE CASE
This is an appeal from a judgment limiting, in advance of trial, the amount recoverable by a plaintiff from the remaining defendant under the Louisiana Medical Malpractice Act (MMA).
On October 25, 1994, Billy Arrington was sent by his family physician to the emergency room of Lake Area Medical Center with a note asking the emergency room physician to admit him for a full inpatient work-up. Mr. Arrington had been experiencing shortness of breath and weakness. While in the emergency room, Mr. Arrington was examined by Dr. Ricardo Samudia, who discharged him without adequate testing. Mr. Arrington went home and died three days later. Susan Arrington sued, individually and on behalf of her two children. Named defendants were Dr. Ricardo Samudria, his insurer, Evanston Insurance Company, ER Physicians Group (a healthcare provider not qualified under the MMA), its insurer, St. Paul Fire and Marine Insurance Company, and Galen-Med d/b/a Lake Area Medical Center. Prior to trial, plaintiff settled with Dr. Ricardo Samudia for $100,000 and with the Patient Compensation Fund (PCF) for $390,000 plus legal interest and costs. Judgment was signed August 15, 2000. Trial on the issue of liability proceeded against ER Physicians Group, St. Paul Fire and Marine Insurance Company *238 and Galen-Med, Inc., d/b/a Lake Area Medical Center. The jury found in favor of the plaintiff, apportioning the fault as follows:
60% to Dr. Ricardo Samudia;
20% to Galen-Med Inc., d/b/a Lake Area Medical Center; and
20% to ER Physicians Group.
After trial, plaintiff settled with ER Physicians Group, Inc. and St. Paul Fire and Marine Insurance Company for $250,000. ER Physicians Group was not qualified under the Medical Malpractice Act and, therefore, not entitled to rely on the cap on recovery of damages.
Prior to trial on the liability issue, the trial court granted the motion of Galen-Med, Inc., d/b/a Lake Area Medical Center to limit its share of the damages to the balance of the statutory limit. The trial court referenced La.R.S. 40:1299.42(B) which provides, in relevant part:
(1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided for in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and costs.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.
The trial court reasoned since plaintiff had already received a combined total of $490,000 from Dr. Samudia and the PCF, the remaining defendant, Galen-Med, Inc. would only be liable for the balance of $10,000 plus interest on $10,000 and 1/49 of the costs. The plaintiff appeals this judgment and asserts the following assignments of error:
(1) The trial court erred in failing to consider medical bills, funeral and burial expenses which are not covered within the cap.
(2) In calculating the amount of the cap on recoveries under the statute, the trial court failed to consider legal interest, all of which considered, increased the amount remaining available to plaintiff under the statute.
(3) The trial court erred in calculating the legal interest owed by Galen-Med to interest on $10,000 instead of interest on the amount of their potential liability of $100,000.
(4) The trial court erred in limiting the portion of costs payable by Galen-Med in advance of trial to 1/49 of the costs. Costs are not governed by the limitation of the statute where the potential principal payment by the negligent health care provider is less than $100,000.
(5) The trial court failed to consider evidence regarding the umbrella liability insurance policy of Galen-Med, and whether the insurer should be allowed to take advantage of the cap on recovery.
For the reasons assigned below, we affirm the decision of the trial court.

ASSIGNMENT OF ERROR NUMBER ONE
Plaintiff requests judgment for the following expenses:
Ambulance on October 28, 1994.
Emergency room visit of October 28, 1994
Funeral expenses including, burial plot, grave marker and interment fee
With regard to the ambulance bill and the emergency room visit, these items are medical expenses and are recoverable from the remaining defendant, Galen-Med, over and above its $10,000 limit. With regard to the funeral expenses including, *239 burial plot, grave marker and interment fee, plaintiff defines these expenses as medical services, included as, "future medical care and related benefits," under La. R.S. 40:1299.42, and argues they are recoverable over and above the statutory limit. The terms "future medical care and related benefits" are defined in La.R.S. 40:1299.43(B)(1) which provides, in relevant part:
"Future medical care and related benefits" for the purpose of this Section means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury.
An identical argument was made in Roy v. Gupta, 606 So.2d 940 (La.App. 3 Cir. 1992) writ denied, 609 So.2d 232 (La.1992). Plaintiffs requested the appellate court to amend the lower court judgment to allow the addition of funeral expenses over and above the statutory limit of $500,000. Plaintiffs argued that funeral expenses were considered "future medical care and benefits" under the statute. This court rejected plaintiff's argument, finding:
La.R.S. 40:1299.43(B)(1) defines future medical and related benefits as "all reasonable medical care, surgical, hospitalization, physical rehabilitation, and other custodial services." Only future medical care and related benefits are paid in addition to the $500,000 limit of the Fund.
The language contemplates the costs of maintaining medical attention for an injured but living victim. We find the bills claimed do not fall into the category contemplated by the statute.
Id. at p. 947.
Accordingly, we find the interment fee, burial plot, and grave marker are not recoverable as expenses by plaintiff over and above the statutory limit.

ASSIGNMENT OF ERROR NUMBER TWO
The plaintiff contends in calculating the limits of recovery under the statute, the trial court failed to consider legal interest. It appears that the trial court did consider legal interest when calculating the amount recoverable against the remaining defendant, Galen-Med. Plaintiff settled with Dr. Sameradi for the $100,000 limit. Plaintiff also settled with the PCF for $490,000, which plaintiff designated as $390,000 in principal, $90,000 in interest and $20,000 in costs. When calculating the total amount paid to plaintiff, the trial court properly excluded interest and found plaintiff had collected $490,000 in principle. We find no error in the trial court's reasoning.

ASSIGNMENT OF ERROR NUMBER THREE
Plaintiff argues the trial court erred in calculating the legal interest owed by Galen-Med to interest on $10,000 instead of interest on $100,000, the amount of their potential liability. A similar issue was presented in Hall v. Brookshire Bros., Ltd., 01-1506 (La.App. 3 Cir. 8/21/02); 831 So.2d 1010, writ granted, 02-2404, 02-2421 (La.11/27/02), 831 So.2d 285. In Hall, the plaintiff argued the PCF owed legal interest on the entire award of $500,000. The PCF argued the health care provider was responsible for interest on $100,000 and the PCF was only responsible for interest on the balance of $400,000, which represented the limits of its liability. The appellate court held the PCF was only liable for interest on that portion of the award representing its legal liability. The court stated:

*240 The Fund is entitled to a credit for the sums tendered in settlement by the health care provider. La.R.S. 40:1299.42(D)(5). Therefore, the Fund is at least liable for interest on $400,000.00 of the total award. The Fund is not liable, however, for interest on the $100,000 tendered in settlement. Interest thereon is the responsibility of the health care provider.... This is consistent with our holding in Futch v. Attwood, 97-259, p.12 (La.App. 3 Cir. 6/18/97); 698 So.2d 958, 964, writ granted, 97-2664 (La.2/6/98); 709 So.2d 721, where "[w]e [did] not find that the amending language in (B)(2) was intended to have legal interest continue to accrue on sums that have already been paid."

Id. at p. 30; 1030.
In this case, we find Galen-Med is only responsible for interest on the amount of its liability, which in this case can only be $10,000.

ASSIGNMENT OF ERROR NUMBER FOUR
The trial court limited the costs owed by Galen-Med to 1/49 of the total. The trial judge arrived at the figure of 1/49 by calculating the ratio of Galen-Med's liability ($10,000) to the amount recovered by plaintiff thus far ($490,000). Plaintiff argues that limiting, in advance of trial, costs chargeable against a defendant unfairly prejudges the costs which still will be incurred in the case. Additionally, plaintiff contends the trial court's ruling places the entire burden of costs on plaintiff and almost no burden on Galen-Med.
Louisiana law provides the trial court "may render judgment for costs, or any part thereof, against any party, as it may consider equitable." La.Code Civ.P. art. 1920. The trial judge is afforded great discretion in determining and allocating costs and will not be reversed on appeal absent an abuse of discretion. See Hunter v. Bossier Medical Center, 31,026 (La.App. 2 Cir. 9/25/98); 718 So.2d 636 and Pelafigue v. Sudduth, 2001-807 (La.App. 3 Cir. 5/15/02); 820 So.2d 583, writ denied, 02-2157 (La.11/8/02); 828 So.2d 1124. The trial court limited Galen-Med's costs to a fractional percentage, after trial on liability and in advance of trial on damages. Plaintiff prevailed at trial on the issue of liability against both defendants, Galen-Med and ER Physician's Group. We find Galen-Med is liable for fifty percent of the costs incurred in the trial on liability and will be solely liable for costs on the trial on damages, since the ER Physician Group settled. We find the trial court erred in limiting Galen-Med's costs. Therefore, we reverse the decision of the trial court on this issue.

ASSIGNMENT OF ERROR NUMBER FIVE
After filing this appeal, plaintiff filed an amended petition naming Health Care Indemnity, Inc. as a defendant under the Direct Action Statute. Health Care Indemnity, Inc. provides excess insurance coverage to Galen-Med in the amount of ten million dollars. Plaintiff contends the case should be remanded to consider evidence regarding the umbrella liability insurance policy issued by Health Care Indemnity covering Galen-Med, and whether the wording of the Health Care Indemnity policy contemplated taking advantage of the limits of Louisiana's Medical Malpractice Act.
In support of their position, plaintiff relies on St. Paul Fire and Marine Insurance Company v. Eusea, 99-2117 (La.App. 1 Cir. 9/22/00); 775 So.2d 32, writ denied, 01-0472 (La.4/27/01); 791 So.2d 116, which held the limitations of the Medical Malpractice Act did not apply to an umbrella *241 policy insurer whose insurance policy did not require the clinic to take advantage of the Act, received premiums without regard to the limitation of liability and had no contractual expectation of limited liability under the Act.
In Eusea, Dr. Roger Blanchard was in a three year family practice residency program at Broadlawns Medical Center in Des Moines, Iowa. A portion of his residency was spent working in Louisiana at Ochsner Family Practice Clinic. Broadlawns, as part of its employment contract with Dr. Blanchard, was to provide medical malpractice insurance coverage. Broadlawns was self-insured up to $250,000 and contracted with St. Paul Fire and Marine Insurance Company (St.Paul) for an excess insurance policy with a limit of thirty million dollars. Broadlawns included Dr. Blanchard as a covered physician under its policy with St. Paul.
In addition to his work at Ochsner, Dr. Blanchard obtained employment at Lady of the Sea General Hospital in Galliano, Louisiana. Dr. Blanchard obtained an additional medical malpractice insurance policy with the Medical Protective Company which covered only his work at Lady of the Sea General Hospital from February 10, 1995 through October 1, 1995. At the time Dr. Blanchard obtained the Medical Protective Company policy he qualified as a health care provider under the Medical Malpractice Act by providing proof of insurance and paying a surcharge.
On September 24, 1996, Ms. Eusea filed a medical malpractice complaint against Dr. Blanchard for treatment she received while at Ochsner Clinic from September 19, 1995 through October 3, 1995, a period of time covered under the Medical Protective Company policy, but for treatment at Ochsner Clinic not Lady of the Sea General Hospital. On December 2, 1997, the PCF certified that Dr. Blanchard had paid all required surcharges and was a qualified health care provider during the time of the alleged malpractice.
The Medical Protective Company denied coverage since the alleged act of malpractice occurred at Ochsner Clinic and not at Lady of the Sea General Hospital. St. Paul filed for declaratory judgment alleging the following: Dr. Blanchard was a qualified health care provider and entitled to rely on the $100,000 limitation on damages afforded under the MMA; Dr. Blanchard is entitled to coverage under the Medical Protective Company policy; the St. Paul policy is in excess of the coverage provided under the Medical Protective Company policy. The trial court found Dr. Blanchard was a qualified health care provider, St. Paul provided coverage to Dr. Blanchard up to $100,000 only and the Medical Protective Company was not liable to Ms. Eusea, Dr. Blanchard or St. Paul under the facts of the case.
The appellate court affirmed the trial court's finding that Dr. Blanchard was a qualified health care provider under the MMA and since he was a qualified health care provider, St. Paul's liability was limited to $100,000. On rehearing, the appellate court reversed its original position with regard to St. Paul, finding not "every insurer of a qualified health care provider is automatically entitled to the limitation of liability contained in the Act." Eusea at p.41. The court noted important factual distinctions in this case. Specifically, Dr. Blanchard was an employee of Broadlawns Medical Center which was self-insured up to the first $250,000. St. Paul had a contractual relationship with Broadlawns Medical Center, not Dr. Blanchard, for excess insurance coverage. The court stated:
When these facts are closely examined, we cannot conclude that St. Paul had any contractual expectation that its *242 liability would be limited under the Medical Malpractice Act. There is no indication in the record that St. Paul imposed a requirement on Broadlawns to take advantage of liability limitations in jurisdictions where Broadlawns' employees engaged in covered activities. The nature of St. Paul's status as an excess insurer does not allow this court to alter the provisions of the contractual relationship between Broadlawns and St. Paul by limiting St. Paul's liability contained in its policy.
In addition to St. Paul not being listed as a malpractice liability insurer of Dr. Blanchard, nor accepting payment of the surcharge imposed under the Act, there is no indication that the premiums assessed by St. Paul were in any way modified by Dr. Blanchard's qualification under the Act. This court is certain that St. Paul received consideration for providing the amount of coverage that is set forth in its policy. There is no indication that the liability limits provided for in the St. Paul policy were in any manner affected or influenced by the Louisiana Medical Malpractice Act. There is no evidence that the St. Paul policy was ever negotiated, purchased, or issued with any consideration that the provisions of the Louisiana Medical Malpractice Act would affect its terms and limits because of the actions of an employee of its insured, Broadlawns Medical Center. St. Paul cannot prevail in arguing that the failure to impose the $100,000 liability limit would undermine the purpose of the Act since there is no evidence that St. Paul ever contemplated receiving the benefits of the Act.
Eusea at pp. 3-4; 41.
In this case, Ms. Arrington asks this court to remand for a determination of whether the excess policy issued by Health Care Indemnity covering Galen-Med contemplated taking advantage of the limits of the MMA. Galen-Med contends the excess policy issued by Health Care Indemnity specifically contemplates the limitation provided under the MMA. Galen-Med points to the language in policy which provides as follows:
SCHEDULE OF UNDERLYING INSURANCE ENDORSEMENT
It is understood and agreed that the limits of liability, as specified in Item 4 of the Declarations, apply excess of the insurance described in the following tables;
Carrier: Louisiana Patient Compensation Fund
Term: Continuous
Limits: $500,000 excess of $100,000.
Galen-Med also relies on Descant v. Administrators of Tulane Educational Fund, 93-3098 (La.7/5/94); 639 So.2d 246. The issue addressed by the Louisiana Supreme Court was whether a plaintiff has a cause of action against a qualified health care provider's insurer for damages above the statutory limit when the qualified health care provider's liability is limited to $100,000.
Deborah and Leon Descant filed suit against Dr. Eduardo Herrara and Tulane Medical Center (Tulane) for damages for injuries sustained by their daughter during her birth. Tulane is a self-insured qualified health care provider under the MMA. Lexington Insurance Company (Lexington) insured Tulane against any hospital professional liability incurred in excess of one million dollars. Lexington was joined as a party pursuant to Louisiana's Direct Action Statute. The trial court granted Lexington's exceptions of no cause/right of action. The supreme court granted writs and affirmed. The Supreme Court stated: *243 Further, the Act provides that as long as the health care provider remains qualified, the provider "and his insurer" are liable for malpractice only to the extent provided by the Act. La.R.S. 40:1299.45 A(1); Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992)...
The direct action statute does not create an independent cause of action against the insurer, it merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured (citations omitted).... Thus, there must be legal liability on the part of Tulane in order for Lexington to be liable. See Ruiz, 162 So. at 738.
We reject plaintiffs' contention that a health care provider remains legally liable for claims beyond the statutory limit of $100,000.... Therefore, because the Medical Malpractice Act restricts the health care provider's liability, there is no cause of action against Lexington and the exceptions must be sustained.
Id. pp. 2-4; 249-49.
Galen-Med d/b/a/ Lake Area Medical Center, unlike Broadlawns Medical Center in Des Moines, Iowa, was a qualified health care provider under the Louisiana MMA. As such, its liability is limited to $100,000. Plaintiff cannot circumvent this statutory limit by suing Galen-Med's excess insurance carrier, Health Care Indemnity, Inc., under Louisiana's Direct Action Statute. The liability of Health Care Indemnity, Inc. is limited to the liability of the insured. We reject plaintiff's argument on this issue.

DECREE
Based on the foregoing review of the record, we reverse the decision of the trial court limiting Galen-Med's court costs to 1/49 and allow recovery of the ambulance bill of October 28, 1994 and the emergency room visit of October 28, 1994. Additionally, it is ordered that Galen-Med pay fifty percent of the costs associated with trial on the liability issue and one hundred percent of the costs associated with trial on damages. It is further ordered that Galen-Med pay interest on the total amount of its liability of $10,000. The plaintiff's motion to remand to consider evidence regarding the umbrella policy covering Galen-Med is denied. In all other respects, the decision of the trial court is affirmed.
AFFIRMED in part, REVERSED in part, and RENDERED.
COOKS, J., dissents in part and assigns reasons.
COOKS, J., dissents in part.
While I agree with the majority that the burial plot and grave marker are not recoverable as expenses over and above the statutory limit, I disagree that plaintiff is not entitled to recover expenses associated with embalming and interment. These expenses are state mandated medical expenses, which in this case was necessitated by and directly related to the act of malpractice by defendants. In Louisiana, the embalming and interment of deceased individuals is regulated by the State Department of Health and Hospitals in Louisiana Revised Statute 40:5, which provides, in relevant part:
The state health officer and the office of public health of the Department of Health and Hospitals shall have exclusive jurisdiction, control, and authority:
...
(14) Over the regulation of the carriage and transportation of ... dead bodies brought into the state or transported through or in the state as they may affect public health.
*244 Additionally, funeral directors are licensed and regulated in Louisiana Revised Statute 37:831 et seq. Louisiana Revised Statute 37:848(D)(5):
Every dead human body shall be disposed of and prepared through a funeral establishment and under the supervision of a licensed funeral home or embalmer.
The expenses incurred by the family to embalm and bury Mr. Arrington are necessary medical expenses and are distinguishable from the cost of the burial plot and grave marker. Accordingly, I would find Galen-Med responsible for the embalming and interment fee over and above the limits of its liability.