896 So.2d 1105 (2005)
Theresa B. MONISTERE, Jo Ann M. Credo, and Mary M. Dargis, Individually and on Behalf of Their Deceased Husband and Father, Respectively, Albert S. Monistere
v.
Tod C. ENGELHARDT, M.D.
In re Medical Review Panel Claim of Theresa B. Monistere, Wife of Albert S. Monistere and Their Children, Jo Ann M. Credo and Mary M. Dargis.
Nos. 04-CA-1126, 04-CA-1127.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
*1106 C.A. Fleming, III, Metairie, LA, for Plaintiff/Appellee-2nd Appellant.
Irving H. Koch, Metairie, LA, for Intervenor/Appellant.
Stephanie B. Laborde, Angela W. Adolph, Baton Rouge, LA, for Intervenor/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On November 7, 2001, the plaintiffs filed this medical malpractice action against Dr. Tod Engelhardt, after a finding by the Medical Review Panel that Dr. Engelhardt breached the applicable standard of care when he performed mitral valve replacement and single vessel coronary bypass surgery on Albert Monistere on March 25, 1999, resulting in a second surgery and subsequently Mr. Monistere's death on March 26, 1999. The plaintiffs are Mr. Monistere's wife, Theresa Monistere, and his daughters, JoAnn Monistere Credo and Mary Monistere Dargis. In their petition, the plaintiffs allege that Mr. Monistere's death was caused by Dr. Engelhardt's negligence, particularly his failure to properly size and seat the mitral valve, which resulted in an A.V. groove separation. Dr. Engelhardt answered the suit, denying that he deviated from the standard of care and asserting that Mr. Monistere's death was caused by a known complication of mitral valve replacement surgery and was unrelated to his care and treatment.
Trial of this matter was held on April 15, 2002, after which the trial judge took the matter under advisement. On May 6, 2002, the trial judge rendered a judgment in favor of the plaintiffs, finding that Dr. Engelhardt deviated from the standard of care and that this deviation caused Mr. Monistere's death and the damages claimed in this lawsuit. The trial judge awarded $175,000 for Mr. Monistere's survival action, and $1,100,000 to Mr. Monistere's wife and daughters for their wrongful death claims. The trial judge reduced this award to $500,000 in accordance with the medical malpractice recovery limits set forth in LSA-R.S. 40:1299.42 B(1). The trial judge also awarded $146,830.82 to the plaintiffs for future *1107 medical care and related benefits, as well as costs and legal interest from the date of filing of the complaint.
On May 14, 2002, the plaintiffs filed a "Motion for New Trial Limited to the Constitutionality of the Limitations of Liability set forth in LA R.S. 40:1299.41, et seq." The Louisiana Patients' Compensation Fund Oversight Board ("PCF") intervened in this action on July 11, 2002. Thereafter, at a hearing on October 18, 2002, the trial judge granted the plaintiffs' Motion for New Trial, allowing them to challenge the constitutionality of the medical malpractice "cap." The PCF sought review of this ruling, but writs were denied by both this Court and the Louisiana Supreme Court. On August 4, 2003, the PCF filed a Motion for Summary Judgment on the issue of the constitutionality of the medical malpractice cap, and a hearing on this motion was held on May 4, 2004. On June 18, 2004, the trial judge granted the PCF's Motion for Summary Judgment, finding that the medical malpractice cap, as set forth in LSA-R.S. 40:1299.42 B, does not violate the state or federal constitutions.
The PCF appeals the May 6, 2002 judgment, contesting the trial court's award of future medical care and related benefits. The plaintiffs appeal the June 18, 2004 judgment, which found that the medical malpractice cap was not unconstitutional, and the May 6, 2002 judgment insofar as it reduced the general damages award to $500,000.

DISCUSSION
Both the plaintiffs and the PCF appeal, but neither appellant challenges the finding of malpractice. Accordingly, this issue is not before us and will not be addressed in this opinion.
At the beginning of trial, counsel for the plaintiffs and Dr. Engelhardt stipulated, among other things, that: 1) if the plaintiffs prevail on liability, negligence and causation, the plaintiffs' general damages exceed the Louisiana medical malpractice $500,000 limitation on general damages; 2) if the plaintiffs prevail on liability, negligence and causation, the plaintiffs are in need of and entitled to "future medical care and related benefits," defined by and pursuant to the Medical Malpractice Act; and 3) the amount of future medical care and related benefits incurred prior to trial total $146,830.82. After finding that Dr. Engelhardt deviated from the standard of care, the trial judge awarded the plaintiffs $146,830.82 for future medical care and related benefits in accordance with the stipulation made by the plaintiffs and Dr. Engelhardt.
On appeal, the PCF contests the trial court's $146,830.82 award of future medical care and related benefits to the plaintiffs. It argues that the award was excessive, because it should not include expenses which are not "future medical care and benefits" under the law. It asserts that funeral and burial expenses, as well as medical expenses incurred prior to the malpractice, are not future medical or related benefits and thus, they are not excluded from the $500,000 statutory cap. It further contends that future medical care and related benefits should not have been awarded because no evidence of these expenses was introduced at trial. Further, it asserts that the PCF is not bound by stipulations made in contravention of the Medical Malpractice Act, particularly when the plaintiffs entered into the stipulation with the health care provider, whose liability cannot exceed $100,000, rather than the PCF, which is responsible for any damages over $100,000 up to the $500,000 cap and any award of future medical care and related benefits in excess of the cap.
*1108 The plaintiffs respond that the issue of whether a patient is in need of future medical care and related benefits and the amount thereof are fact questions, and any fact can be judicially admitted. The plaintiffs further argue that a joint stipulation does not require that the underlying evidence be produced, and summaries may be submitted at trial in lieu of the original or underlying documentation per LSA-C.E. art. 1006.
The Medical Malpractice Act seeks to further two competing goals: 1) to ensure the availability of safe and affordable health care services to the public; and 2) to simultaneously limit the potentially significant liability exposure of health care providers. LSA-R.S. 40:1299.41 et seq.; Hall v. Brookshire Brothers, Ltd., 02-2404 (La.6/27/03), 848 So.2d 559, 565. Although the Medical Malpractice Act impedes the ability of an injured party to obtain full recovery of his/her damages, the overall purpose of the Act is to limit the liability of health care providers and thereby limit the skyrocketing costs of medical malpractice insurance. Id. at 568.
In 1984, the Louisiana legislature added provisions to the Medical Malpractice Act which afford future medical care and related benefits to patients in need. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210; rehearing denied, 93-1142 (La.3/25/94), 635 So.2d 247. The purpose of these statutory provisions is to grant severely injured malpractice victims, who have been deprived by the cap of compensation for any necessary medical services, a speedy, convenient, and inexpensive administrative remedy for the payment of actually incurred medical expenses without limit, except as tailored to the patient's needs. Id. at 1217-1218. The addition of R.S. 40:1299.43(B)(1) was not intended to raise the medical malpractice cap. Rather, the language of R.S. 40:1299.43 B(1) contemplates the costs of maintaining necessary medical care for an injured but living victim. Roy v. Gupta, 606 So.2d 940, 947 (La.App. 3 Cir. 10/6/92), writ denied, 609 So.2d 232 (La.12/11/92).
LSA-R.S. 40:1299.43 B(1) provides that "future medical care and related benefits" includes "all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury." Future medical care and related benefits are expressly excluded from the statutory cap, pursuant to LSA-R.S. 40:1299.42 B(1) and LSA-R.S. 40:1299.43 D. LSA-R.S. 40:1299.42 B(1) provides:
The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
LSA-R.S. 40:1299.43 D provides:
Payments for medical care and related benefits shall be paid by the patient's compensation fund without regard to the five hundred thousand dollar limitation imposed in R.S. 40:1299.42.
In the present case, the trial court awarded $146,830.82 to the plaintiffs for future medical care and related benefits in accordance with the stipulation made by the plaintiffs and Dr. Engelhardt. However, the PCF, which is responsible for payment of any future medicals in excess of the cap, was not a party to this stipulation. Further, stipulations cannot be made in derogation of the law in order to avoid the *1109 recovery limits of the medical malpractice act and to do so would undermine the purpose of the statutory cap.
LSA-R.S. 40:1299.42 B(1) only permits future medical care and related benefits, as well as interest and costs, to be recovered in addition to the $500,000 cap. The summary of future medical and related expenses admitted at trial reveals that the $146,830.82 total includes expenses that are outside the scope of "future medical care and related benefits" as defined in LSA-R.S. 40:1299.43 B(1). First, funeral and burial expenses are not future medical and related benefits and cannot be awarded in addition to the statutory cap. Arrington v. E.R. Physicians Group APMC, 03-02 (La.App. 3 Cir. 5/21/03), 847 So.2d 236, 239; Gupta, supra. Accordingly, the portion of the future medical award for funeral, cemetery, and burial expenses is reversed and vacated.
Second, future medical care and related benefits per R.S. 40:1299.43 are to be awarded for expenses incurred after the medical malpractice occurs. The summary of medical expenses admitted into evidence does not indicate whether the doctor and hospital bills are for services performed before or after the malpractice or both. Because the only portion of these bills that can be awarded in addition to the cap is the portion incurred after the medical malpractice occurred and the record does not distinguish between those expenses incurred before or after the malpractice, we vacate the trial court's award of future medicals and remand to the trial court for a hearing to determine the proper amount of future medical expenses and related benefits to be awarded to the plaintiffs, pursuant to LSA-R.S. 40:1299.43.
In their appeal, the plaintiffs contend that the trial court erred in reducing the general damages award to $500,000, because it is an unconstitutional disparity of treatment to interpret the medical malpractice cap in LSA-R.S. 40:1299.42 B(1) without an adjustment for inflation. The plaintiffs assert that the $500,000 limitation of recovery set forth in the Medical Malpractice Act, specifically R.S. 40:12989.42 B(1), which was originally enacted in 1975, should be reformed to include a cost of living adjustment in order to fulfill constitutional guarantees and implement the statutory intent to provide equal compensation for the injuries of victims today at the same level as those in the past. They argue that the PCF has not demonstrated a legitimate state objective in allowing the cap to be lowered annually due to the effect of inflation, and in allowing the same injuries that were fully compensated years ago under the cap to no longer be fully compensated due to the absence of a cost of living adjustment.
The PCF responds that the $500,000 cap does not violate federal or state constitutions. It argues that the Medical Malpractice Act has withstood numerous constitutional challenges and that it is the power of the legislature, not the judiciary, to decide whether or not the act should be reformed to adjust the cap for inflation.
In Butler v. Flint Goodrich Hospital of Dillard University, 607 So.2d 517 (La.1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993), the Louisiana Supreme Court considered a constitutional challenge to the limitation on malpractice damages under the Medical Malpractice Act. Although the Court acknowledged that the $500,000 statutory cap distinguished between classes of persons whose damages were under $500,000 and those whose damages were *1110 over $500,000, it found that this discrimination was not arbitrary, capricious, and unreasonable. The Court discussed the benefits that the cap provides to medical malpractice victims and stated that the Louisiana Medical Malpractice Act represents "a reasonable but imperfect balance between the rights of victims and those of health care providers." Therefore, the Court concluded that Louisiana's Medical Malpractice Act does not violate either the state or federal constitutions. See also Moody v. United Nat. Ins. Co., 95-1 (La.App. 5 Cir. 5/10/95) 657 So.2d 236, writs denied, 95-2063, 95-2085 (La.11/17/95), 663 So.2d 713 and Ruiz v. Oniate, 00-2105 (La.App. 4 Cir. 12/2701), 806 So.2d 81, wherein the $500,000 medical malpractice cap was found to be constitutional.
The Louisiana legislature enacted the Medical Malpractice Act in 1975. Undoubtedly, the legislature was aware of the effects of inflation and could have added provisions regarding inflation and adjustment of the $500,000 cap, but did not do so. Further, the legislature added provisions for future medical care and related benefits in 1984 and certainly could have raised or modified the cap to account for inflation if it so chose at that time or at some point in time since 1975. The legislature has thus far rejected requests to modify the cap any further. In fact, in Kelty, supra at 1217, the Louisiana Supreme Court noted that the "future medical care and related benefits" provisions were added to the Medical Malpractice Act, because the legislature preferred an administrative medical relief program over simply raising the cap, as other states have done.
We agree with the trial court that the statutory cap set forth in LSA-R.S. 40:1299.42 B(1) does not violate the state or federal constitutions. Thus, it is not within this Court's authority to modify the existing legislation.

DECREE
For the reasons set forth above, we affirm the June 18, 2004 judgment of the trial court finding that the statutory cap on medical malpractice damage awards is not unconstitutional. We reverse and vacate the award of funeral, cemetery, and burial expenses. Further, we vacate the trial court's award of future medicals in the May 6, 2002 judgment and remand to the trial court for a hearing to determine the proper amount of future medical expenses and related benefits to be awarded to the plaintiffs, pursuant to LSA-R.S. 40:1299.43. In all other respects, the May 6, 2002 judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.